**UNITED STATES DISTRICT COURT
DISTRICT COLORADO**

| | |
|---|---|
| GS HOLISTIC, LLC, | Case No. 1:23-cv-01923-RMR-NRN |
| Plaintiff, | |
| v. | |
| Abdul Wader Qurban Inc., et al, | |
| Defendants, | |

**MOTION FOR DEFAULT FINAL JUDGMENT AGAINST DEFENDANTS**

Pursuant to Federal Rule 55(b)(2), the Plaintiff, GS HOLISTIC, LLC, moves this Court for entry of default judgment against the Defendants, Abdul Wader Qurban Inc., and Abdul Qader Asib,, in this action. The Defendants were served with the summons and Complaint but failed to file an answer or otherwise defend in this lawsuit. The Plaintiff now requests that this Court enter the attached proposed Default Judgment and Order for Other Equitable Relief, and Civil Money Penalties ("Default Judgment"). The Default Judgment award includes Statutory Damages of $944,185.98, and Costs in the amount of $962.00 to be imposed against the Defendants.

**I. PRELIMINARY STATEMENT**

As a result of Defendants' failure to appear in this action and the subsequent entry of default against them, the material factual allegations set forth in the Plaintiff's Complaint must be accepted as true. Those allegations establish all of the necessary elements of the Plaintiff's claims for (i) willful trademark infringement of the Stündenglass trademarks in violation of 15 U.S.C. §§ 1114; (ii) trademark counterfeiting of the Stündenglass trademarks in violation of 15 U.S.C. §§ 1116(d); and (iii) willful trademark infringement (false designation) in violation of 15 U.S.C. § 1125(a).

On the facts presented, it is also appropriate for the Court to grant the Plaintiff all relief

requested in this motion, namely:

> a.    Statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c) in the amount of $944,185.98 and
>
> b.    Costs in the amount of $962.00.

In sum, the Plaintiff seeks an award of statutory damages for Defendants' offer for sale of a counterfeit good and willful conduct, and an award of the Plaintiff's costs.

## II.    STATEMENT OF FACT

### a.    The "STÜNDENGLASS" Trademarks and Plaintiff's Business.

GS has worked to distinguish the Stündenglass brand as the premier manufacturer of glass infusers by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking experience.  Compl. ¶ 9. Folkerts Decl. as to Damages.  Stündenglass branded products embody a painstaking attention to detail, which is evident in many facets of authentic Stündenglass branded products. *Id.*  GS has built a reputation within the industry throughout the United States based on the high quality of its products. Because of this goodwill and reputation, the Stündenglass Trademarks and GS in general have become famous. *See* Folkerts Decl. as to Damages.

As a result of the continuous and extensive use of the Stündenglass trademarks GS was granted both valid and subsisting federal statutory and common law rights to the Stündenglass trademarks. Compl. ¶ 10; *See* Exhibit A.  GS has used the Stündenglass Marks in commerce throughout the United States, continuously, since 2020, in connection with the manufacturing of glass infusers and accessories.  Compl. ¶ 13. Folkerts Decl. as to Damages. The Stündenglass Marks are distinctive to both the consuming public and the Plaintiff's trade. *Id*.  GS's Stündenglass branded products are made from superior materials. Folkerts Decl. as to Damages. The superiority of Stündenglass branded products is not only readily apparent to consumers, but to industry

professionals as well.  Compl. ¶ 14; Folkerts Decl. as to Damages.

The Stündenglass Trademarks are exclusive to GS and appear clearly on GS's Stündenglass products, packaging, and advertisements. Compl. ¶ 15; *See* Exhibit A.  GS has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting these Trademarks. Compl. ¶ 15. Folkerts Decl. as to Damages.  As a result, products bearing GS's Stündenglass Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS. Compl. ¶ 15. Folkerts Decl. as to Damages.

GS's Stündenglass Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs.  Compl. ¶ 16. *See* Exhibit B.  Because of GS's efforts, the Stündenglass brand is famous throughout the United States.  Compl. ¶ 16. Since 2020, GS has worked to build significant goodwill in the Stündenglass brand in the United States. GS has spent substantial time, money, and effort in developing consumer recognition and awareness of the Stained-glass brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion.  Compl. ¶ 17. *See* Exhibit B. In fact, the Stündenglass Products have been praised and recognized by numerous online publications, as well as publications directed to the general public.  Compl. ¶ 17-18. *See* Exhibit B.

At the time of this Complaint, the Plaintiff was the owner of federally registered and common law trademarks. *See* Exhibit A.

b.      The Stündenglass marks are a Counterfeiting Target.

GS sells its products under the Stündenglass Marks to authorized stores in the United States, including in Colorado. Folkerts Decl. as to Damages. GS has authorized approximately

3,000 stores in the United States to sell its products. *Id*. As such, Stündenglass branded products reach a vast array of consumers throughout the country. Compl. ¶ 19. Folkerts Decl. as to Damages.

It is because of the recognized quality and innovation associated with the Stündenglass Marks that consumers are willing to pay higher prices for genuine Stündenglass products. For example, a Stündenglass brand glass infuser is priced at $599.95, while a non-Stündenglass branded product is also being sold for up to $600, with a range of $199 to $600. Compl. ¶ 20. Folkerts Decl. as to Value of Damages ¶¶ 10-14. *See* Exhibit C.

c.    Defendants' Infringing Conduct and Failure to Litigate.

The Defendants have offered for sale at least three, but likely more, counterfeit Stündenglass infusers and/or related parts. *See* Exhibit C. The counterfeit offered for sale bore the trademarks that are registered to the Plaintiff. *See* Exhibit C. The Defendants' acts constitute willful trademark infringement because they knew or should have known that the counterfeit offered for sale was not authentic. The products lacked an authenticity sticker and was missing pieces and sold for only $285.00 in one of the three stores. The Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by the Defendants because they are the same marks and are not alleged to belong to any other source or origin than the Plaintiff. Compl. ¶ 42-43; *see* [ECF]. *See* Exhibit C. The Defendants have failed to respond to the Complaint or otherwise appear in this action, effectively avoiding discovery of important evidence showing actual sales, wholesaler source information, financial disposition, or state of mind. The Plaintiff is not obligated to expend its own limited resources by law to chase down Defendants that have by their disregard of the summons and Complaint served on them

4

neglected to defend themselves despite their legal duty to do so – the requisite sanctions for which are default and that the allegations of the Complaint are taken as true.  To require such a chase would be an unfairly shifted burden to the Plaintiff in default cases.

## III. LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter a default judgment against properly served Defendants who fail to file a timely responsive pleading. Fed. R. Civ. P. 55(b); *Williams v. Life Sav. & Loan*, 802 F.2d 1200 (10th Cir. 1986) (Before a district court may enter a default judgment, it has an affirmative duty to confirm that it possesses both subject matter jurisdiction over the action and personal jurisdiction over the defaulting defendant).By failing to answer, a "defendant admits to [the] complaint's well-pleaded facts and forfeits his or her ability to contest those facts." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). In other words, the entry of a default judgment relieves the plaintiff "from having to prove the complaint's factual allegations." *Id.* at 765.

## IV. ARGUMENT

A.  <u>A Default Judgment Should Be Awarded Against the Defendants</u>.

The Plaintiff has fulfilled its obligations under Fed. R. Civ. P. 55(b). As shown in the record of this matter, the Plaintiff served the Defendants, on August 4, 2023 [ECF 11 & 12]. The merits of GS's case and the sufficiency of GS's Complaint warrant the entry of default judgment against the Defendants. Once default is entered against a defendant, that party is deemed to have admitted all well-pleaded allegations in the complaint, except those related to damages. *See Purzel Video GmbH v. Martinez*, 13 F. Supp. 3d 1140, 1148-49 (D. Colo. 2014).

### 1. Trademark Infringement (15 U.S.C §1114)

To prevail on a trademark infringement claim under 15 U.S.C. § 1114, a Plaintiff must

prove that a Defendant used, without the consent of the registrant, "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To establish liability for infringement of a federally registered trademark in violation of the Lanham Act, a party must show that: (1) it owns a trademark, (2) the infringer used the mark in commerce without authorization, and (3) the use of the alleged infringing trademark "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Goode v. Ramsaur*, No. 20-CV-00947-DDD-KAS, 2024 WL 3849756, at *5 (D. Colo. Aug. 16, 2024), report and recommendation adopted, No. 1:20-CV-00947-DDD-KAS, 2024 WL 4591414 (D. Colo. Sept. 3, 2024)

The Plaintiff, GS HOLISTIC, has established each of these elements. First, registered trademarks are entitled to a presumption of ownership and validity. *See* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark . . .").; *See also*. Exhibit A. Federal registration of a trademark is prima facie evidence of the mark's validity and of the registrant's exclusive ownership of and right to use the mark. 15 U.S.C. § 1057(b). Here, GS is the owner of the Stündenglass Trademarks, which are exclusive to GS. CompI. at ¶ 10; *See* Exhibit A.  Stündenglass Marks are registered with the United States Patent and Trademark Office (the "USPTO").  *See Id*. Therefore, GS has satisfied the first element.

The Defendants' use of counterfeit Stündenglass Marks in commerce are obvious. *See* Exhibit C. The Defendants do not have, nor did they have consent to offer products bearing Stündenglass marks. Folkerts Decl. as to Damages. Instead, the Defendants intentionally traded on the goodwill of the Stündenglass' Marks - free riding on its reputation for profit, - causing deception in the marketplace, and diverting potential sales of the Plaintiff's infusers to the Defendants.   The Defendants further have sold in commerce Counterfeit Goods using

reproductions, counterfeits, copies and/or colorable imitations of Stündenglass Marks. The gravity infuser, which donned the alleged Trademarks, was sold for a profit in the ordinary stream of commerce. *Id*. The Defendants' use of the Stündenglass Marks includes advertising, displaying, selling, and/or offering for sale unauthorized and illegitimate copies of Stündenglass branded products. *See* Exhibit C. Therefore, GS has satisfied the second element.

Many courts have recognized that when the defendant's business involves use of counterfeit imitation marks (like in this matter), likelihood of confusion is presumed. *See H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1032 (E.D. Wis. 2018) (collecting cases) ("Counterfeiting creates a presumption of a likelihood of confusion because the defendant's products are likely to confuse consumers when the marks on those products are identical to or closely resemble the plaintiff's marks."); *GMC v. Autovation Techs., Inc.*, 317 F. Supp. 2d 756, 761 (E.D. Mich. 2004). The Defendants used counterfeit marks that are identical to the GS's registered Stündenglass Marks. *See* Exhibit C; *See* Exhibit A.  As seen in the pictures, the Defendants' marks are copies of GS's registered Stündenglass Marks.

### 2. False Designation of Origin and Unfair Competition (15 U.S.C. §1125(a))

Under 15 U.S.C. § 1125(a) ("Section 1125(a)"), any person who uses in commerce "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" in a manner likely to cause confusion, mistake, or deception as to the "affiliation, connection, or association" of that person or "as to the origin, sponsorship, or approval" of that person's goods or services by another person is liable in a civil action. 15 U.S.C. § 1125(a)(1)(A).

Similar to Section 1114, to establish liability for unfair competition under the Lanham Act, a plaintiff must show: "(1) that it had trademark rights in the mark or name at issue and (2) that the

7

other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Topnotch Innovations, LLC v. Dean*, No. 2:20-cv-1384, 2020 U.S. Dist. LEXIS 194772, at \*5 (S.D. Ohio July 28, 2020). The Sixth Circuit has held that claims brought under Sections 1114 and 1125(a) have the same elements. *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014).

Accordingly, the Defendants' acts, as described above, constitute false designation of origin and unfair competition. Given the Defendants' default, the Defendants deemed admitted the allegations in the Complaint, and therefore, the Plaintiff has established its claim for false designation of origin and unfair competition.

B.   Plaintiff Should be Awarded Statutory Damages

The Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. Moreover, it constitutes false designation of origin which is likely to cause confusion and mistake as it will deceive consumers as to the source or origin of such goods or sponsorship or approval of such goods by the Plaintiff. As a result, the elements have been satisfied and statutory damages should be awarded.

The Lanham Act allows the plaintiff to elect statutory damages instead of actual damages. 15 U.S.C. § 1117(c). The Lanham Act provides for an award of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just . . . ." 15 U.S.C. § 1117(c)(1). Where willfulness is demonstrated, however, a maximum award of $2,000,000 per counterfeit mark per type of good sold, offered for sale, or distributed, may be awarded. 15 U.S.C. § 1117(c)(2).

In 2008, Congress amended the Lanham Act to "enhance civil and criminal penalties for intellectual property violations [and] to make commercial scale IP theft less profitable and easier

8

to prosecute. . ." See H.R. Rep. 110-617, 110th Cong., 2nd Sess. 2008. *Louis Vuitton Malletier v. Eisenhauer Rd. Flea Mkt., Inc.*, No. SA-11-CA-124-H, 2011 U.S. Dist. LEXIS 170450, at *5 (W.D. Tex. Dec. 19, 2011). The court in *Playboy Enters., Inc. v. Universal Tel a Talk, Inc.*, CIVIL ACTION NO. 96-6961, 1999 U.S. Dist. LEXIS 6124, at *6 (E.D. Pa. Apr. 26, 1999) also acknowledged that "Congress intended to recognize that counterfeiting, while a subsection of infringement, represents a greater evil than ordinary infringement, and thus allowed an alternative route to damages and a lesser degree of required notice." The court in *Adobe Sys. Inc. v. Chukoula LLC*, No. CV-17-1808-MWF (SKx), 2018 U.S. Dist. LEXIS 251312, at *15 (C.D. Cal. Feb. 27, 2018) recognized that records kept by counterfeiters are frequently nonexistent, inadequate or deceptively kept.[1]

This is why courts frequently decline to limit statutory damages awards if they are within the range provided by Congress, leaving the weighing of circumstantial evidence to a jury as other measures of calculation are not required or provided for in the statute:

> It then held a trial to decide statutory damages. The jury found that Star did not act willfully, and it awarded Republic $123,000 in damages per mark—below the maximum of $200,000 per mark permitted by section 1117(c)(1) for non-willful infringement. The district court denied Star's motion for judgment as a matter of law challenging the size of the verdict. <u>Because the verdict fell within the range of statutory damages permitted by Congress and Star did not object to the jury instructions about awarding those damages, we affirm</u>.

---

[1] *Adobe Sys. Inc. v. Chukoula LLC*, No. CV-17-1808-MWF (SKx), 2018 U.S. Dist. LEXIS 251312, at *15 (C.D. Cal. Feb. 27, 2018).

> Congress appears to have been motivated by a gap in the law: Plaintiffs who were victorious on their civil counterfeiting claims were often unable to obtain an adequate recovery in actual damages because counterfeiters often maintain sparse business records, if any at all." *Louis Vuitton*, 676 F.3d at 110 (citing S. Rep. 104-177, at 10 (1995)) (noting that "counterfeiters records are frequently nonexistent, inadequate or deceptively kept").

In *Top Tobacco, L.P. v. Star Imps. & Wholesalers, Inc.*, No. 24-10765, 2025 U.S. App.

LEXIS 10484, at \*2 (11th Cir. Apr. 30, 2025), the court explained how statutory damage awards

by the jury should be left to rest[2] citing both the Supreme Court and the Eighth Circuit, precisely

reading the plain language of the statute. *Id*.

A plaintiff who proves a violation of a registered trademark is entitled to recover its profits

---

[2] *Top Tobacco, L.P. v. Star Imps. & Wholesalers, Inc.*, No. 24-10765, 2025 U.S. App. LEXIS 10484, at \*2 (11th Cir. Apr. 30, 2025).

Star's argument that the verdict needed to be related to actual damages is also wrong as a legal matter. The lodestar for the legality of an award for statutory damages is the range enshrined by Congress—not the amount of actual damages. In the copyright context, for example, a district "court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 852 (11th Cir. 1990) (emphasis added) (citation and internal quotation marks omitted). And the Supreme Court has explained that a statutory damages award "must be within the prescribed limitations, that is to say, neither more than the maximum nor less than the minimum" but "[w]ithin [\*10] these limitations the court's discretion and sense of justice are controlling." *F. W. Woolworth Co. v. Contemp. Arts, Inc.*, 344 U.S. 228, 232, 73 S. Ct. 222, 97 L. Ed. 276 (1952) (citation and internal quotation marks omitted). The jury had wide latitude to award a within-range verdict regardless of the size of actual damages.
…
Nothing in section 1117(c) nor precedent suggests that statutory damages must be related to actual damages; instead, all signs point toward the opposite conclusion. Section 1117(c) states that plaintiffs may pursue statutory damages "instead of actual damages and profits." 15 U.S.C. § 1117(c) (emphasis added). In a related context, the Copyright Act authorizes statutory damages regardless of "whether or not adequate evidence exists as to the actual damages incurred by plaintiffs." *Cable/Home Communication Corp.*, 902 F.2d at 850. That Act uses the same language as section 1117(c): plaintiffs "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." 17 U.S.C. § 504(c)(1). We extend this evident principle to the trademark context. As our sister circuit has explained, "[i]t makes no sense to consider the disparity between 'actual harm' and an award of statutory damages when statutory damages are designed precisely for instances where actual harm is difficult or impossible to [\*11] calculate." *Capitol Recs., Inc. v. Thomas-Rasset*, 692 F.3d 899, 907-08 (8th Cir. 2012).

and any damages sustained. 15 U.S.C. § 1117(a).  However, "in a case involving use of a counterfeit mark . . . the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater. . .." 15 U.S.C. § 1117(b).  Several courts have found "statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed."  *Coach, Inc. v. Cellular Planet,* No. 2:09-cv-00241, 2010 U.S. Dist. LEXIS 62033, at *2 (S.D. Ohio June 22, 2010); *Microsoft Corp. v. McGee*, 490 F.Supp.2d 874, 882 (S.D. Ohio 2007).  In setting an appropriate statutory damages amount, the Court has wide discretion. *Microsoft Corp. v. Compusource Distributors, Inc.,* 115 F.Supp.2d 800, 811-12 (E.D. Mich. 2000). However, it should be considered that the Supreme Court in *St. Louis, Iron Mountain & Southern Railway Co. v. William*s intended not to overstep Congress's provision of that discretion implying that a ratio of one cent would be sufficient damage to recover the statutorily provided $300 in damages.  It also noted that the choice to award closer to the middle of the range permitted in that case, supported that due process was not violated.[3]

---

[3] The Court in *Tobacco, L.P. v. Star Imps. & Wholesalers, Inc.*, No. 24-10765, 2025 U.S. App. LEXIS 10484, at *15-16 (11th Cir. Apr. 30, 2025) clearly explained how *Williams* provides a wide ratio for punitive damages so long as they are in the range statutorily constructed by Congress:

> The within-range verdict against Star is not so disproportionate as to offend the Constitution. In *St. Louis, Iron Mountain & Southern Railway Co. v. William*s, the Supreme Court held that a statutory damages award violates due process "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." 251 U.S. 63, 66-67, 40 S. Ct. 71, 64 L. Ed. 139 (1919). As one scholar has explained, "Williams seemingly approved a very high ratio between the legislatively created remedy and potential plaintiff harm" because it "upheld the statutory maximum of $300, which would apply even if the overcharge was unintentional and only in the amount of one cent." *See* Colleen P. Murphy, Reviewing Congressionally Created Remedies for Excessiveness, 73 OHIO ST. L.J. 651, 692 (2012). In the light of Star's concession that "[t]he maximum amount of actual damages possibly supported by the evidence, assuming the jury made every inference in favor of Republic, was $200,000," the verdict in this appeal was well below that ratio. And

Here, the Plaintiff seeks a reduced amount of statutory damages that would be available for non-willful infringement. Its request for damages is reasonably considered to effectively deter counterfeiting and well within the statutory range available for that offense.

In addition, the court in Deckers *Outdoor Corp. v. Australian Leather Pty*, No. 16 CV 3676, 2020 U.S. Dist. LEXIS 150474, at *12-14 (N.D. Ill. July 13, 2020) explained clearly the harsh reality that actual damages are only one factor to consider but rather in similar cases the damages ranged widely when also considering deterrent effect and tended to be based on an award per mark as the statute considers:

> The Defendants argue that the jury award lacks a rational connection to the evidence because they estimate Deckers's actual damages to be only about $1,200. To be sure, "revenue lost is one factor to consider" in reviewing statutory damages. *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 127 (2d Cir. 2014). But there need not be a "direct correlation between statutory damages and actual damages." *Id*. Congress created statutory damages in the Lanham Act because proving actual damages in counterfeiting cases is "extremely difficult if not impossible." *Louis Vuitton Malletier S.A. v. LY USA*, Inc., 676 F.3d 83, 110 n.27 (2d Cir. 2012) (quoting S. Rep. [*13] No. 104-177, at 10 (1995)). As I instructed the jury, statutory damages not only compensate the injured party, but also "discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233, 73 S. Ct. 222, 97 L. Ed. 276 (1952). Here, a reasonable jury could have been motivated by the need to punish and deter, rather than compensate. *See Psihoyos*, 748 F.3d at 127 …
> Finally, the award here falls within the reasonable range of counterfeiting awards in similar cases. While jury awards in analogous cases provide a reference point for assessing reasonableness, an award in another case "doesn't have to be" an "exact match" to be roughly comparable. *Vega v. Chi. Park Dist*., 954 F.3d 996, 1008-09 (7th Cir. 2020). Counterfeiting awards in other cases range from well below the award here, to the statutory maximum of $2 million. *See Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd*., No. CV 14-2307, 2014 U.S. Dist. LEXIS 132169, 2014 WL 4679001, at *12 (C.D. Cal. Sept. 18, 2014…; *see also H-D U.S.A., LLC v. SunFrog, LLC*, 311 F.Supp.3d 1000, 1049 (E.D. Wis. 2018) (awarding $300,000 per mark); *Philip Morris USA Inc. v. C.H. Rhodes, Inc*., No. 08-CV-0069, 2010 U.S. Dist. LEXIS 29348, 2010 WL 1196124, at *6 (E.D.N.Y. Mar. 26, 2010) ($500,000 per mark), adopted by 2010 U.S. Dist. LEXIS 39114, 2010 WL 1633455 (E.D.N.Y. Apr. 21, 2010); [*14] *Rolex Watch U.S.A., Inc. v. Zeotec Diamonds,*

---

> that the verdict fell closer to the middle than the top of the range for statutory damages further confirms that it did not violate the Due Process Clause.

*Inc*., No. CV 02-01089, 2003 U.S. Dist. LEXIS 5595, 2003 WL 23705746, at *5 (C.D. Cal. Mar. 7, 2003) ($300,000 per mark); *Rolex Watch U.S.A., Inc. v. Jones*, No. 99 CIV. 2359, 2002 U.S. Dist. LEXIS 6657, 2002 WL 596354, at *6 (S.D.N.Y. Apr. 17, 2002) (recommending $500,000 per mark).

Here, the Plaintiff is asking within the range of awards that have been granted on a per mark basis.

Because the Defendants have failed to participate or respond to this action, the Plaintiff has retained an expert to evaluate the financial disposition of retail smoke shops in the region of the United States and what amount would sufficiently deter the Defendants and others similarly situated as it relates to the damage done here to the Plaintiff. *See*. Exhibit E.  This expert report's suggested damages are conservative, since available data is based on reporting, cash deals are common in this industry and counterfeiters are not likely to report or record evidence of wrongdoing.  *Id*. They have engaged in the offer for sale of counterfeits of at least one unit and likely traded in more as similar retailers have done nationwide. *See* Folkerts Decl. as to Value of Damages; *see also* Folkerts Decl. as to Damages.  While actual damages to the Plaintiff may not be calculated with exact certainty, an assessment of damages has been compiled by the GS Holistic, LLC. *See Id*. GS Holistic, LLC, Owner, Chris Folkerts, states that the Plaintiff is seeking only a fraction of the actual losses to its business and that damages of $944,185.98 are reasonable since the actual damage to the business cannot reasonably be measured. *See* Exhibit E.  Such irreparable harm includes loss of consumer goodwill, long-term damage to reputation, free ride taken on the Plaintiff's marketing efforts - which measure in the millions per year and diverted profits. *See Id*.

In addition, here, due to the default, the Defendants deem admitted the allegations of willfulness in the Plaintiff's Complaint.  "A court may infer that a defendant's infringement is willful from the defendant's failure to defend." *Coach, Inc. v. Cellular Planet*, 2010 U.S. Dist. LEXIS 62033, *6 (S.D. Ohio June 22, 2010); *Microsoft Corp. v. McGee*, 490 F.Supp.2d at 880

(S.D. Ohio May 7, 2007). *North Atlantic Operating Company, Inc. v. JingJng Juang*, no. 15-14013-TBG [DKT. 276], at *6 (E.D. Mich. May 9, 2017); *BBK Tobacco & Foods LLP v. AAA Traders Inc. et al*, Case No. 2:19-cv-11973-AJT-RSW (E.D. Mich. 2020); *Oakley, Inc. v. Ly*, No. 20-CV-1414-WJM-MEH, 2021 WL 3206320, at *2 (D. Colo. July 29, 2021) (A Court may infer that infringement is willful based on a defendant's failure to respond or otherwise defend an action.)

Moreover, courts find that willfulness under 15 U.S.C. § 1117(c) includes knowing, intentional, or reckless acts. *See Lorillard Tobacco Co. v. Yazan's Serv. Plaza, Inc*., 2007 U.S. Dist. LEXIS 45612, *16 (E.D. Mic. June 25, 2007); *Wildlife Express Corp. v. Carol Wright Sales, Inc*., 18 F.3d 502, 511 (7th Cir. 1994)("Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights."). *H-D U.S.A., LLC v. Sunfrog, LLC*, 311 F. Supp. 3d 1000 (E.D. Wis. 2018) (Describing "ostrich-like" business tactics as constituting willful blindness and extensively analyzing the *Tiffany* innocence defense as relevant only when the Defendant actually shows up to court with a "bended knee" as opposed to ignoring the lawsuit as a nuisance.)

Here, the Defendants at least acted with willful blindness to the Plaintiff's rights. Defendants are not authorized dealers of Stündenglass products. Defendants are in the business of selling tobacco products including glass infusers and thus it can be reasonably inferred that they have knowledge of the Stündenglass brand in the smoking products market. The Defendants did not purchase the products from GS Holistic, the product lacks an authenticity sticker which GS advertises is required to register the authentic products on its website, the product was missing parts and being sold for $285.00 in one of the three stores when the authentic products retail for $600, all strongly indicate that Defendants should have known that the products were not authentic.

14

Investigation could have simply constituted an inquiry with GS as to wholesaler and/or product legitimacy by phone, email, or skim of its website which makes it easy to look out for counterfeits. Nevertheless, the Defendants failed to investigate or inquire despite the ease and incredibly low burden of doing so, recklessly disregarding any potential infringement on the Plaintiff's rights, which supports willful infringement.

Statutory damages do not only compensate for injuries sustained but also act as a deterrent and discourage wrongful conduct by the defendant and others *See Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 852-53 (E.D. Mich. 2006). Based on the blatant disregard by the Defendants of this case, this Court, and the Plaintiff's rights, the damages assessment of the Plaintiff's damages expert, Prab Multani, an award of $944,185.98 is an appropriate award of statutory damages well within the discretion of the Court to award. This amount not only reflects actual damages suffered by the Plaintiff, but the irreparable and immeasurable harm to its reputation and sends an unequivocal message to the industry that counterfeiting will not be tolerated.

Moreover, GS believes that $944,185.98 for a statutory-damages award is in line with other statutory-damages awards determined by the courts in the Sixth Circuit in other similar counterfeit sales actions. *See JUUL Labs, Inc. v. FLI High*, LLC, 2021 U.S. Dist. LEXIS 154240, *2 (N.D. Ohio Aug. 17, 2021)(awarding $150,000 statutory damages for three marks); *BBK Tobacco & Foods LLP v. AAA Traders Inc.* et al, Case No. 2:19-cv-11973-AJT-RSW (E.D. Mich. July 23, 2020)(awarding $50,000 per trademark); *Luxottica Grp., S.p.A. v. 111 Pit Stop, Inc.*, 2020 U.S. Dist. LEXIS 132462, *22 (M.D. Tenn. July 27, 2020)(awarding $100,000 per type of counterfeit mark per type of counterfeit good, for a total award of $1,000,000.); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio June 22, 2010)(awarding plaintiff Microsoft $ 100,000 in statutory damages for each of five trademarks, plus $ 30,000 in statutory damages for each of 7

trademarks, for a total of $ 710,000 in statutory damages). *See* Exhibit D.

Furthermore, the statutory-damages award of $150,000 is in line with other statutory-damages awards made in Stündenglass cases, in various districts. *See Id*. Here, the Defendants have infringed on three of the GS's trademarks with the Registration Numbers 6,633,884, 6,174,292, and 6,174,291, justifying $150,000.00 in statutory damages.

C. <u>Plaintiff preserves its right to a jury trial to determine damages.</u>

Plaintiff has respectfully submitted prior jury verdicts, prior decisions from other districts, and an individualized expert report to support its request for statutory damages. However, to the extent that this Court declines to award Plaintiff's requested damages, Plaintiff respectfully request that a jury determine the damages that should be awarded to Plaintiff.

Rule 55(b)(2) specifically provides that "[a] court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgments…" As specifically provided in Rule 55(b)(2), Plaintiff preserves its right to a jury trial in all areas in which this Court declines to enter the judgment as requested herein. *Applied Capital, Inc. v. Gibson*, 558 F. Supp. 2d 1189, 1202 (D.N.M. 2007) ("Rule 55(b)(2) does not contain an inherent jury requirement; rather, i**t preserves the right to a jury only when statute requires**.") (emphasis added).

In *GS Holistic v. Vaportoke*, Case No. 1:23-cv-01513-RMR-NRN (DE 110), this Court already recognized that the question of willfulness under 15 U.S.C. Section 1117(c)(2) should be presented to the jury and included in the jury instructions. As such, Plaintiff respectfully renews that request – already ruled by this Court – that damages below the requested amount should be decided by a jury.

D. <u>Plaintiff is Entitled to Costs of Litigation</u>

Pursuant to 15 U.S.C. § 1117, the Plaintiff is entitled to recover the costs of the action. See 15 U.S.C. § 1117. The Plaintiff requests that this Court award costs in the total amount of $962.00 consisting of the filing fee ($402.00), the process server fee ($95), and Plaintiff's investigation fees ($465).

### E.  Plaintiff is Entitled to Injunctive Relief

By the reasons explained in Plaintiff's Complaint and pursuant to 15 U.S.C. § 1116, the Plaintiff is entitled to injunctive relief. The Plaintiff requests that this Court enter an order which permanently enjoins Abdul Wader Qurban Inc., and Abdul Qader Asib,, and their agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concert or participation with it from:

(a) Import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing advertising or promotion of the counterfeit Stündenglass product identified in the complaint and any other unauthorized Stündenglass product, counterfeit, copy or colorful imitation thereof;

### F.  Plaintiff is Entitled to Destruction of Infringing Products

Pursuant to 15 U.S.C. §1118, the Plaintiff requests that this Court grant an order requiring the Defendants, at their cost, deliver to the Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the Stündenglass Marks.

## V.    CONCLUSION

Given the foregoing, this Court should grant Plaintiffs' motion in its entirety.

Date: May 26, 2026

Respectfully submitted,

EDDY LEAL, P.A.

777 Brickell Avenue, Suite 500
Miami, FL 33131
Phone: 305-979-3900
Email: EL@leallegal.com
E-Service: eservice@leallegal.com

By: /s/ Eddy Leal
        Eddy Leal, Esq.
        Florida Bar No. 96030

*Attorney for GS Holistic LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 26, 2026, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF to serve on all counsel of record.

/s/ Eddy Leal
Eddy Leal, Esq.
Florida Bar No. 96030